IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARILUZ ACOSTA-PADILLA, | ) | |
| | ) | CASE NO. 1:15-CV-847 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | KENNETH S. McHARGH |
| SECURITY ADMINISTRATION, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Mariluz Acosta-Padilla's ("Plaintiff" or "Acosta-Padilla") applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be VACATED, and the case be REMANDED back to the Social Security Administration.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits on March 13, 2012, alleging disability due to thyroid, diabetes, neuropathy, asthma, high blood pressure, and emotional problems, with an onset date of July 1, 2011.  (Tr.

1

58, 71). The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 70, 83, 99, 114).

Plaintiff requested that an administrative law judge convene a hearing to evaluate her applications. (Tr. 140). On September 11, 2013, an administrative hearing was held before an Administrative Law Judge Susan G. Giuffre ("ALJ"). (Tr. 27-57). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id.*). An interpreter, Katherine Hoyos, was present, and vocational expert ("VE"), Adolf Zwik, also testified via telephone. (*Id.*). On November 8, 2013, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 11-21). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently,

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 6-7). The Appeals Council denied her request for review, making the ALJ's November 8, 2013, determination the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on May 1, 1961 and was 50 years old on the alleged onset date. (Tr. 58). Plaintiff graduated high school in Puerto Rico, and speaks both Spanish and English. (Tr. 32). Her past experience includes work as a cook, cafeteria worker, and a fitting room attendant. (Tr. 69). Plaintiff lives alone in a second floor apartment, and does not drive, but will get driven by her son when necessary. (Tr. 38, 337).

### B.  Medical Evidence[2]

#### 1.  Physical

Plaintiff has a history of diabetes mellitus type 2 with accompanying complaints of leg and foot pain, with records dating back to October 20, 2010. (Tr. 285-89, 296-306, 393). Plaintiff was consistently assessed with bilateral leg and foot pain on physical examination, as well as pitting edema, numbness, and tingling in her extremities, related to her diabetes. (Tr. 285-89, 296-99, 449). Although Plaintiff was prescribed various medications for her condition, her diabetes continuously showed signs of being "uncontrolled." (Tr. 292, 365, 397-98). On November 14, 2012, examination notes from Lorain County Health & Dentistry showed Plaintiff

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record. As Plaintiff's assignments of error refer to her vision and mental health, the medical evidence summary focuses on these, and related, conditions.

was positive for vision changes on review of systems, but physical examination revealed no injection in either eye.  (Tr. 397-400).

Plaintiff attended a one-time consultative examination with Christina Feser, D.O., on July 14, 2012.  (Tr. 360-66).  At that time Plaintiff reported a history of diabetes since 2008 for which she takes oral medication, and stated she infrequently had low blood sugar with symptoms of shaking, nausea, and sweating.  Plaintiff reported current symptoms of chronic pain, numbness, tingling in her bilateral legs and feet (as well as swelling in her legs and cracked dry skin on her feet), blurry vision on a daily basis, shortness of breath, and chronic fatigue.  (Tr. 361, 365).  It was noted that Plaintiff indicated her symptoms affect her ability to work secondary to difficulty with prolonged standing and walking, and managing her blood sugar and symptoms.  (*Id.*). Examination revealed 1+ edema in her bilateral lower legs, with good hand-eye coordination and a symmetric, steady gait.  (Tr. 364-65).  Plaintiff was oriented to time, place, person and situation, and exhibited good eye contact and concentration, clear thought processes, and appropriate mood.  (Tr. 364).

Examination notes documented a history of blurry vision, but with generally normal findings upon eye examination.  Dr. Feser determined Plaintiff had decreased visual acuity and peripheral neuropathy resulting from her uncontrolled diabetes mellitus.  Plaintiff's visual acuity was reported as 20/40 in her left eye, 20/50 in her right eye, and 20/40 bilaterally without corrective lenses.  (Tr. 363, 365).  Her visual fields were shown to be intact.  (*Id.*).  Due to her decreased visual acuity, Dr. Feser suggested a follow-up with ophthalmology, and opined that she had "some relevant visual limitations."  (Tr. 365-66).

2. Mental

Plaintiff attended individual counseling sessions at the Nord Center on June 14, 2011 and July 27, 2011 for depression, with reference to grief over her daughter's illness and impending death. (Tr. 356-58). On August 8, 2011, Plaintiff saw Dominic Gomes, M.D., who diagnosed her with panic disorder with agoraphobia and depressive disorder NOS, assigning a GAF score of 57, indicating moderate symptoms or difficulty in social, occupational, or school functioning. (Tr. 353). Evaluation notes showed Plaintiff reported an onset of depression in 1990 with suicidal thoughts, and that over the past six years she had been noticing that she does not like to go out on her own. (Tr. 351). Plaintiff further reported her symptoms were becoming progressively worse to the point of not wanting to leave her home at all, and that she was concerned that she would be unable to continue her employment at Wal-mart due to her anxiety. (*Id.*).

Plaintiff underwent a 2-part diagnostic assessment beginning on May 8, 2012, and completed on May 14, 2012, to re-establish mental health care. (Tr. 337-47). Plaintiff stated she previously had transportation issues, but that her son was now able to assist her. (Tr. 344). At this time Plaintiff was diagnosed with chronic adjustment disorder with mixed anxiety and depressed mood, and given a GAF score of 60, again indicating moderate symptoms or difficulties, and a rule out diagnosis of malingering. (Tr. 344-45). Evaluation notes stated Plaintiff appeared noncompliant with her medications, noting refill dates of four months prior, but pills remained in most medication bottles. (Tr. 344). The evaluator noted Plaintiff provided vague answers and described only selective behaviors when asked to describe her symptoms, but that she stated she does not like to go out if she does not have to, although she will go out to go the store, to complete activities of daily living, or for appointments. (Tr. 338, 344). Further, she reported a depressed mood since November of 2011, and stated she was always irritable and in a

5

bad mood. When asked to describe her symptoms of anxiety, Plaintiff became irritated and the volume of her voice became elevated. (Tr. 342, 344).

Plaintiff again presented at the Nord Center for a Diagnostic Assessment update on November 15, 2012. (Tr. 404-10). The assessment report showed similar findings to her original assessment in May, 2012, and she was again diagnosed with chronic adjustment disorder with mixed anxiety and depressed mood, with a rule out diagnosis of malingering. (Tr. 404-08). Plaintiff's GAF score was elevated to 61, indicating some mild symptoms or some difficulty in social, occupational, or school functioning. (tr. 408). She reported that she did not do anything and was not good for anything, was mildly unkempt in appearance, and demonstrated poor insight and judgment. (Tr. 404, 410). Plaintiff continued counseling at the Nord center from December 12, 2012 through July 1, 2013, with records generally indicating "some progress" or "good progress," but with continuing symptoms of depression and anxiety. (Tr. 411, 417-19, 470, 472, 475-76, 480, 483). Plaintiff further reported that she was very forgetful, such as forgetting to take medications, appointments, names of close relatives, and forgetting in the middle of conversations what the conversation was about. (Tr. 419).

Plaintiff attended a one-time consultative psychological examination with Thomas Zeck, Ph.D., on July 26, 2012. (Tr. 373-78). Plaintiff reported that she was applying for social security benefits because of leg pain and being overweight, and stated several times that she was "not crazy," although admitted feeling tense, anxious, and nervous. (Tr. 373). Although stating she was depressed, Plaintiff indicated she did not know why, and Dr. Zeck further noted she was vague and uncooperative, not able to express how she was feeling, and did not have motor or autonomic signs of depression. (Tr. 375).

6

Plaintiff told Dr. Zeck that she is also unable to work because she does not like to be around people, although he noted that her previous jobs required working around others. (Tr. 374). Dr. Zeck documented that Plaintiff appeared fearful and uncertain, was not very verbal, offered little information, and was poor for dates and chronology. (Tr. 375). Noting very minimal effort, Plaintiff performed poorly on sensorium and cognitive functioning, and her concentration, rote memory, and immediate recall placed her in the mental defective range. (Tr. 375). Dr. Zeck also pointed out that, unlike this evaluation, previous evaluation in March of 2012 found Plaintiff to be oriented to time, place, person and situation, with normal insight and judgment. (Tr. 376).

Dr. Zeck diagnosed Plaintiff with anxiety disorder NOS with a GAF of 57, and opined that she would have work related difficulties. (Tr. 376, 378). Specifically, Dr. Zeck found Plaintiff would have the following limitations: difficulty in understanding, remembering, and carrying out instructions; difficulty maintaining attention and concentration; difficulty interacting with supervisors and co-workers; and difficulty with work stress and pressures. (Tr. 378). However, Dr. Zeck determined Plaintiff is able to manage her own funds. (*Id.*).

<u>State Agency Reviewing, Non-Examining Consultants</u>

1. Physical

On July 23, 2012, non-examining state agency physician Anne Prosperi, D.O., found Plaintiff had "severe" impairments of asthma, diabetes mellitus, obesity, and loss of visual acuity. (Tr. 63). Along with lift/carry and stand/walk/sit limitations, Dr. Prosperi opined that Plaintiff should never climb ladders, ropes, or scaffolds, due to peripheral neuropathy, bilateral leg and foot pain and decreased sensation, and morbid obesity. (Tr. 65-67). Dr. Prosperi further instructed that Plaintiff should avoid unprotected heights and hazardous machinery due to

peripheral neuropathy and morbid obesity. (Tr. 67). Dr. Prosperi found no visual limitations. (Tr. 66). On December 8, 2012, Bradley J. Lewis, M.D., generally confirmed these findings, including a finding of no visual limitations, although he added a severe impairment of peripheral neuropathy. (Tr. 92-96).

    2. Mental

On August 7, 2012, Caroline Lewin, Ph.D, a state agency reviewing consultant, assessed Plaintiff with "severe" anxiety disorders. (Tr. 63). Dr. Lewin determined that Plaintiff's anxiety caused mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 63-64). Regarding her mental RFC, Dr. Lewin opined that Plaintiff had sustained concentration and persistence limitations, as well as moderate limitations with appropriately interacting with the public. (Tr. 67-68). Her report indicated Plaintiff had moderate limitations in maintaining attention and concentration for extended periods, moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychological-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 67-68). Due to these limitations, Dr. Lewin opined that Plaintiff was able to perform tasks which did not involve strict time and production demands, as well as those which did not require contact with the general public. (Tr. 68).

On January 23, 2013, another state agency reviewing consultant, Cindy Matyi, Ph.D., generally confirmed the findings of Dr. Lewin. (Tr. 92). In addition, Dr. Matyi found an additional severe impairment of affective disorders, limited Plaintiff to tasks which did not require contact with the general public, and only occasional and superficial interaction with co-workers, and noted that changes should be well explained. (Tr. 97). Similar to the opinion of

8

Dr. Lewin, Dr. Matyi specifically found that Plaintiff could perform simple tasks which did not involve strict time and production demands. (*Id.*).

### C. Plaintiff's Testimony

At the hearing held September 11, 2013, Plaintiff testified that she takes oral medication for her diabetes mellitus, but that she had been warned by her doctor that she will need insulin injections if she does not get the condition under control. (Tr. 42). She stated that, due to neuropathy, she experiences tightening in her legs, numbness on the bottom of her feet, and shooting pains. (Tr. 45-46). Plaintiff testified that she no longer drives because she gets nervous, and depends on her son to drive her to appointments. (Tr. 38). Further, she stated she no longer goes to church and does not go out because it is depressing, and that she suffers from panic attacks, although she does not know what causes them. (Tr. 38-39). Plaintiff testified that she does not time the panic attacks but that they can last a couple hours, that her heart beats a lot, and she gets nervous and scared, but symptoms will subside if she is with someone she knows. (Tr. 40-41). Plaintiff did not provide testimony relating to her vision.

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since July 1, 2011, the alleged onset date.

3. The claimant has the following severe impairments: asthma, diabetes mellitus with peripheral neuropathy, loss of visual acuity, obesity, anxiety related disorder and affective disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can balance frequently. She can occasionally perform stooping, kneeling, crouching or crawling. She should avoid concentrated exposure to extremes of heat and cold. The claimant should avoid concentrated exposure to humidity. She should avoid concentrated exposure to dust, fumes, odors, gases or poor ventilation, and similar things. She should avoid all exposure to hazards defined as industrial machinery, unprotected heights, and similar things. She is able to perform tasks which do not require contact with the general public and which have only occasional and superficial interaction with coworkers. She has the capacity to work where changes are well explained.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on May 1, 1961 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2011, through the date of this decision.

(Tr. 13-21) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

10

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  Dr. Feser

Plaintiff argues that the RFC was inconsistent with the opinion of Dr. Feser because it did not include a visual limitation, and that the ALJ erred by failing to explain this inconsistency and to specify the weight given to Dr. Feser's opinion. Plaintiff correctly points out that Dr. Feser's

11

report included a finding that Plaintiff had "some relevant visual limitations due to decreased visual acuity," which was not accounted for in the RFC.  However, the Court finds that the ALJ sufficiently analyzed Dr. Feser's findings, and her decision to formulate the RFC without including visual restrictions was within her discretionary authority.

If the opinion of a medical source contradicts the RFC finding, an ALJ must explain why she did not include its limitations in the determination of the RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96-8p explains, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).  However, it is not necessary for the ALJ to discuss every piece of evidence in the record, and "failure to cite specific evidence does not indicate that it was not considered.'" *Dykes v. Barnhart*, 112 F. App'x 463, 467-68 (6th Cir. 2004) (*quoting Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

Here, the ALJ did not ignore Dr. Feser's treatment notes or opinion.  Rather the ALJ thoroughly discussed medical records from Plaintiff's single in-person treatment session with Dr. Feser (including her statement that Plaintiff had decreased visual acuity), demonstrating that she considered Dr. Feser's findings when formulating the RFC. (Tr. 17).  Although the ALJ did not designate the weight attributed to Dr. Feser, she sufficiently considered the physician's opinion and indirectly communicated that she gave it at least some weight, stating that "[t]he opinion of consultative examiner Feser is supported by the objective findings on examination." (Tr. 19); *see*

12

*Salter v. Comm'r of Soc. Sec.*, No. 4:12-cv-888, 2015 WL 1880393 (N.D. Ohio Apr. 24, 2015) (upholding decision of ALJ despite failure to specify weight given to consultative, examining physician, where ALJ sufficiently considered the opinion and effectively communicated it was given some weight). Further, Plaintiff does not point to any physical limitation (other than diminished visual acuity, discussed further below) included in Dr. Feser's report that is not adequately accounted for by the RFC.

The undersigned acknowledges that the ALJ did not incorporate visual limitations in the RFC despite Dr. Feser's remarks that Plaintiff exhibited decreased visual acuity, and included no explanation as to this omission. However, as discussed more fully in the next section, the Court finds such an omission was within the discretionary authority of the ALJ to formulate an RFC based on her review of the evidence. *See* 20 C.F.R. 404.1546(c); *see generally Garland v. Shalala*, No. 94-6647, 78 F.3d 584, *8 (6th Cir. Mar. 5, 1996) ("[I]t is the responsibility of the ALJ to identify the pertinent evidence from medical and nonmedical reports which leads him to assess a claimant's residual functional capacity."). Alternatively, if the omission was considered erroneous, any such error was harmless, as Plaintiff does not point to evidence that shows a more restrictive RFC was necessary to account for Plaintiff's limitations. Plaintiff has not demonstrated that she was otherwise prejudiced by the ALJ's analysis of Dr. Feser's opinion. Accordingly, Plaintiff's assignment of error is not well taken.

**B. <u>RFC and Step 5</u>**

Plaintiff contends that the ALJ's finding at Step Five is flawed because her conclusions are based on an RFC and corresponding hypotheticals that do not account for all of Plaintiff's limitations. At the fifth and final step of the disability analysis, the ALJ must determine whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make

an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(v). At this step, the burden shifts to the commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004) *(quoting Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987))*.

Substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question. *Id.* The VE's opinion testimony may only be used as substantial evidence of a claimant's RFC when that testimony is in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments." *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990). Nevertheless, it is also "well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact" into the hypothetical question. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

1. <u>Visual Acuity</u>

According to Plaintiff, the evidence of record established that she required visual limitations in her RFC. In support, Plaintiff points to the findings of Dr. Feser, Plaintiff's complaints of daily blurred vision, and the ALJ's acknowledgment of a loss of visual acuity under Plaintiff's severe impairments. However, Plaintiff fails to convince this Court that the omission of any limitation for visual ability warrants remand.

The ALJ's decision does not support Plaintiff's argument that the ALJ did not consider the impact of this impairment when determining her RFC. It is the responsibility of the ALJ to

analyze the record and assess a claimant's RFC based on the evidence presented. 20 C.F.R. 404.1546(c). "The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences." *McCain v. Dir., OWCP*, 58 F. App'x 184, 193 (6th Cir. 2003). Here, the majority of medical evidence relating to Plaintiff's vision was contained in the consultative examination report of Dr. Feser, which the ALJ referred to in detail in her decision. (Tr. 14, 17). The ALJ specifically acknowledged Dr. Feser's findings showing Plaintiff had decreased visual acuity, with 20/40 vision in her left eye and 20/50 in her right eye (without corrective lenses). (*Id.*). As she was not required to specifically cite to every piece of evidence, the undersigned does not find that the ALJ erred by not specifically referring to the statement of Dr. Feser that Plaintiff has "some relevant visual limitations," or Plaintiff's self-report of daily blurred vision, because the ALJ's decision clearly demonstrated that she considered Dr. Feser's entire report, including the specific findings of her eye examination. *See, e.g.*, *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

Additionally, Plaintiff does not point to any case law or evidence that shows a more restrictive RFC is necessary to account for her eyesight. No medical source, including Dr. Feser, specified any necessary work-related limitation for Plaintiff's vision that would support Plaintiff's argument that the RFC does not adequately account for her decreased visual acuity. Indeed, the state agency reviewing consultants, given great weight by the ALJ, opined that Plaintiff had no visual impairments, even taking into account her documented loss of visual acuity. (Tr. 65-67, 94-96); *see generally* 20 C.F.R. 404.1527(e)(2)(i) ("State agency medical and psychological consultants…are highly qualified physicians…who are also experts in Social Security disability evaluation…."). Further, all other findings from Dr. Feser's eye examination were normal, and medical records do not exhibit any further eye impairments beyond the noted

decreased visual ability. (Tr. 363). Accordingly, Plaintiff's argument that the RFC does not accurately address Plaintiff's visual limitations has no merit.

Even if the ALJ's failure to include a limitation accounting for Plaintiff's loss of visual acuity was erroneous, such error would be harmless and therefore not require remand. *See Shkabari v. Gonzales,* 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). At the hearing, the VE testified an individual with the limitations set forth in the RFC would be able to work as an electrical accessories assembler (DOT #729.687-010), an inspector/hand packager (DOT #559.687-074), or a laundry worker (DOT #302.685-010). (Tr. 20, 52-53). The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") shows that each of these positions requires "frequent near acuity," which is defined as "[c]larity of vision at 20 inches or less," from one-third to two-thirds of a work day, but list no requirement for "far acuity," defined as "[c]larity of vision at 20 feet or more." SCO, pp. 132, 204, 284, Appendix C-4.

Despite her argument to the contrary, Plaintiff has not pointed to any authority or evidence showing her limited vision of 20/40 would preclude her from performing these three representative jobs. Her visual exam indicated her vision is mildly limited[3] without corrective lenses, and Dr. Feser's report further documented that Plaintiff exhibited good hand-eye coordination. (Tr. 363-64). Further, although the evidence included some self-reporting of daily blurred vision, nothing in the record demonstrated the duration or extent of her blurred vision, and her claims are nonetheless not substantiated by objective medical evidence. As the jobs list

---

[3] The Social Security Administration rates a visual acuity finding of 20/40 at 85% visual acuity efficiency. 20 C.F.R. Part 404, Subpart P, Appendix 1, 2.00(A) *Special Senses and Speech.*

16

only requirements for near acuity, Plaintiff has not shown that she would not be able to perform these jobs, even with additional limitations restricting her visual abilities in accordance with the record evidence. Accordingly, Plaintiff has failed to show she would have been entitled to benefits, and remand is not required on this issue. *See* Martinez v. Comm'r of Soc. Sec., 692 F. Supp. 2d 822, 827, fn. 1 (N.D. Ohio 2010) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'") (*quoting* Shineski v. Sanders, 129 S. Ct. 1696, 1706 (2009)); *see generally* Mathews v. Eldridge, 424 U.S. 319, 336 (1976) (noting Plaintiff has the burden of establishing his entitlement to disability benefits).

    2. <u>Concentration, Persistence, and Pace</u>

Plaintiff alleges that the RFC does not properly account for her moderate limitations in concentration, persistence, and pace. At step three of the sequential analysis, the ALJ determined that Plaintiff had moderate difficulties in this area. (Tr. 14). The ALJ then assigned the following mental limitations in the RFC:

> She is able to perform tasks which do not require contact with the general public and which have only occasional and superficial interactions with coworkers. She has the capacity to work where changes are well explained.

(Tr. 15).

In support of her argument, Plaintiff cites to Ealy v. Commissioner of Social Security, 594 F.3d 504 (6th Cir. 2010). In *Ealy*, the court determined that the claimant's limitations were not fully conveyed to the vocational expert where the hypotheticals omitted speed- and pace-based restrictions, despite both the ALJ and medical source opinion that the claimant had moderate limitations in pace, speed, and concentration. *Ealy*, 594 F.3d at 516. Specifically, a state agency psychological consultant limited the plaintiff's ability to sustain attention to complete simple, repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Id*.

17

Despite this opinion, the ALJ limited the plaintiff to only simple, repetitive tasks without any additional time-based limitations. As a result, the Sixth Circuit concluded that the ALJ failed to adequately capture the plaintiff's limitations in concentration, persistence, and pace. *Id.*

Here, the ALJ committed reversible error when she failed to include any limitations regarding her moderate difficulties with concentration, persistence, or pace. "*Ealy* advocates a fact-based approach to determine whether, considering the record evidence, the plaintiff required specific limitations regarding his or her moderate difficulties with concentration, persistence, or pace." *Weagraff v. Comm'r of Soc. Sec.*, No. 1:11-CV-2420, 2013 WL 968268 (N.D. Ohio Jan. 7, 2013) (*citing Jackson v. Comm'r of Soc. Sec.*, No. 1:10-CV-763, 2011 WL 4943966, *4 (Oct. 18, 2011). In support, Plaintiff points to the opinions of Dr. Lewin and Dr. Matyi, who both stated that Plaintiff could perform tasks which did not involve strict time and production demands. (Tr. 68, 97). The ALJ gave "great weight" to the opinions of Dr. Lewin and Dr. Matyi, specifically finding the opinions "consistent with the evidence of record." (Tr. 19). Further, at Step Three the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence or pace, and was thus required to account for such limitations in the RFC. *See Widok v. Comm'r of Soc. Sec.*, No. 1:13-CV-667, 2014 WL 4064043, *14 (N.D. Ohio Aug. 15, 2014). Accordingly, the ALJ's failure to provide for any speed- or pace-based restrictions in the RFC was in error.

Further, the hypotheticals presented to the vocational expert at the hearing were based on the deficient RFC and thus did not accurately account for Plaintiff's limitations. Where controlling hypotheticals do not adequately describe a claimant's limitations, the testimony and conclusions of a vocational expert based on those hypotheticals do not serve as substantial evidence that the claimant can perform certain kinds of work. *Ealy*, 594 F.3d at 517. Here, the

VE's testimony that Plaintiff had the capacity to work as an electrical accessories assembler, an inspector/hand packager, and laundry worker was based on hypotheticals that did not account for Plaintiff's limited abilities regarding concentration, persistence or pace.  (Tr.  20, 50-56).  As such, the ALJ's reliance on the VE's testimony that there are jobs in the national economy that Plaintiff is able to perform, and is thus not disabled, is not based on substantial evidence.  Accordingly, remand is necessary to determine whether jobs exists that the Plaintiff is capable of performing, based on all of her relevant limitations.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be VACATED, and the case be REMANDED back to the Social Security Administration.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  May 5, 2016.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).